IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEONARD A. FABIANO, JR.,

              Plaintiff,

    v.

CHRIST MOVERS, LLC,

              Defendant.

CIVIL ACTION
NO. 2:24-cv-00842

## OPINION

**Slomsky, J.**                                                           **October 2, 2024**

## I.    INTRODUCTION

This case arises out of injuries sustained during Plaintiff Leonard Fabiano's ("Plaintiff") move from Charleston, South Carolina to West Chester, Pennsylvania. (Doc. No. 1 at ¶ 7.) Plaintiff hired Defendant Christ Movers, LLC ("Defendant") to pack and move Plaintiff's belongings from Charleston to West Chester. (Id.) During the move, Plaintiff alleges that Defendant struck the basement door of Plaintiff's West Chester house with the moving truck, requiring repair and/or replacement to the basement door. (Id. at ¶ 25.) Plaintiff further alleges that Defendant insisted Plaintiff help unload Plaintiff's belongings from Defendant's moving truck and, while helping to unload, Plaintiff fell off the back of the truck, severely injuring his elbow. (Id. at ¶ 29.) On October 13, 2023, Plaintiff filed a Complaint against Defendant in the Chester County Court of Common Pleas alleging negligence. (Id. at ¶ 40.) On February 27, 2024, Defendant removed the case to this Court on the basis of diversity of citizenship jurisdiction. (Id.) On March 8, 2024, Defendant filed a Motion to Dismiss the recklessness allegations in the Complaint and to Strike certain paragraphs. (Doc. No. 7.) For reasons that follow, Defendant's Motion to Dismiss (Doc. No. 7) will be denied.

## II.    BACKGROUND

In February 2023, Plaintiff Leonard Fabiano ("Plaintiff") hired Defendant Christ Movers, LLC ("Defendant"), a residential moving service, to pack and move the contents of Plaintiff's apartment and storage unit from Daniel Island in Charleston, South Carolina to West Chester, Pennsylvania.  (Doc. No. 1 at ¶ 7.)  On May 24, 2023, Defendant, through its agents, arrived at Plaintiff's storage unit to begin the move.  (Id. at ¶ 9.)  From the moment the movers arrived, the move went awry.  (See id.)  Plaintiff's Complaint details Defendant's mishaps throughout the move as follows:

- On or about May 24th, 2023, agents, employees, servants, workmen, and/or representatives of Defendant . . . presented to Mr. Fabiano's Charleston, SC storage unit late, understaffed and without proper equipment to effectuate the move of Mr. Fabiano's property.

- Defendants presented with a 20' box truck and a 17' trailer rather than the agreed upon 26' moving truck and 17' x 10' trailer capable of holding a proper load. The 17' trailer presented included a 6' width not built for heavy loads.

- Agents, employees, servants, workmen, and/or representatives of Christ Movers immediately enlisted Mr. Fabiano to assist their work in moving items from his Daniel Island home to a staging area around the moving truck and trailer.

- As the 17' trailer became full, Defendant's, agents, employees, servants, workmen, and/or representatives notified Plaintiff that the 20' box truck would be needed for another job and took the trailer for storage at The Port House Apartments on Daniel Island to park overnight, with a plan to return that evening but never arrived due to being held at the next job, ceasing operations for the day.

- On or about May 25, 2023, Defendant's agents, employees, servants, workmen, and/or representatives agreed to meet Mr. Fabiano at the Charleston, SC storage unit at 9:30am.

- Again, agents of Defendants presented at the storage unit late, ultimately loading Plaintiff's possessions from the storage unit into a 20' box truck at approximately 1:00pm. The box truck was 66% full upon emptying the storage unit.

- At Plaintiff's two bedroom apartment on Daniel Island, the 20' box truck quickly became full and Defendants needed to secure an additional 17' box truck to finish packing portion of the now-delayed move to West Chester, Pennsylvania.

- Upon information and belief, Defendants appear to have driven as far as Virginia on the evening of May 25, 2023. It was later learned the Defendants stopped at a storage facility in Summerville, SC to pick up a load for delivery at an unknown location. This merchandise was carried to West Chester, PA with Mr. Fabiano's possessions.

- On or about May 25, 2023, Defendant's truck broke down in Laurel, MD. At approximately 5:00PM on May 26, 2023 Defendant notified Mr. Fabiano that his truck and trailer had broken down and would not make it to West Chester, PA.

- On Saturday, May 27, 2023 the Defendant solicited additional payment of $500[.]00 from Plaintiff to recover the repairs to the truck.

(Id. at ¶¶ 9-18.)   Plaintiff further alleges that repeatedly throughout the move, he witnessed Defendant's agents "smoke[] marijuana to the point of intoxication affecting their ability to safely and effectively conduct the moving operation and creating a great hazard to Plaintiff and the public generally." (Id. at ¶ 37.)

On May 27, 2024, after a delay resulting from these mishaps, Defendant arrived at Plaintiff's house in West Chester, Pennsylvania with several trucks.  (Id. at ¶¶ 19, 21.)  They were packed full of Plaintiff's belongings from his South Carolina apartment and storage unit.  (Id.) Because Defendant arrived at Plaintiff's house at approximately 7:00 p.m., he offered to obtain a hotel room for Defendant's agents so that they could complete the move-in process the following morning.  (Id. at ¶¶ 19-20.)  Defendant's employees, however, insisted on completing the move that same day and, as a result, the move proceeded in the dark.  (See id.)

To assist with the move-in process, Defendant again insisted that Plaintiff, as well as his 27-year-old daughter, help unload the trucks and carry items inside the house.  (Id. at ¶¶ 21, 23.) Plaintiff and his daughter accommodated Defendant's request for help and moved "repeatedly in

and out of the unlit 'box' of the box trucks assisting with the move Defendants were hired to complete, in the presence and at the direction of Defendant's employees and agents." (<u>Id.</u> at ¶ 26.) As Defendant's agents, Plaintiff and his daughter moved in and out of the unlit box truck, they "utilized ramps at the rear of the box trucks for entry and exit of the box trucks." (<u>Id.</u> at ¶ 27.) While Plaintiff was inside the dark interior of one of the box trucks, "one of Defendant's agents removed, or never put in place, the ramp from the rear of the subject box truck without notifying Plaintiff." (<u>Id.</u> at ¶ 28.) As a result, when Plaintiff stepped off the back of the box truck, he fell, landing directly on his elbow and "severely shattering the joint resulting in a compound fracture requiring an ambulance and two resulting surgical procedures during five consecutive days at Paoli Hospital . . . ." (<u>Id.</u> at ¶ 29.)

In addition to Plaintiff's physical injury, the move also resulted in damage to Plaintiff's property. Throughout the unloading process, "Defendant[] repeatedly moved and repositioned the box trucks creating a chaotic and dangerous atmosphere." (<u>Id.</u> at ¶ 24.) At one point "[w]hile moving and adjusting the trucks, Defendant[] struck Plaintiff's basement door with a box truck requiring repair and/or replacement." (<u>Id.</u> at ¶ 25.)

On October 13, 2023, Plaintiff filed suit against Defendant in the Court of Common Pleas of Chester County, Pennsylvania, alleging that Defendant acted negligently, causing, among other things, the injury to Plaintiff's elbow and to the basement door of Plaintiff's house.[1] (Doc. No. 1

---

[1] The list of the injuries Plaintiff incurred as a result of Defendant's alleged negligence is as follows:

    a.  compound fracture of the left elbow requiring multiple surgical repairs;
    b.  bruising, cuts and abrasions to the left side of his torso;
    c.  mental and emotional pain;
    d.  chronic physical pain, suffering and loss of life's pleasures, past, present, and future;
    e.  loss of performing his usual duties and activities[;]

at ¶ 2.)  On February 27, 2024, Defendant removed the case to this Court.  (<u>See</u> Doc. No. 1.)  On March 8, 2024, Defendant filed a Motion to Dismiss for Failure to State a Claim and to Strike certain paragraphs.  (Doc. No. 7.)  On June 14, 2024, Plaintiff filed a Response in Opposition. (Doc. No. 8.)  On October 1, 2024, the Court held a hearing on Defendant's Motion to Dismiss. (<u>See</u> Doc. No. 9.)  Defendant's Motion (Doc. No. 7) is now ripe for disposition.

## III.   STANDARD OF REVIEW

### A.  Standard on a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  After <u>Iqbal</u> it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  <u>Id.</u> at 678; <u>see also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Tatis v. Allied Interstate, LLC</u>, 882 F.3d 422, 426 (3d Cir. 2018) (quoting <u>Iqbal</u>, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads

---

  f. loss of earnings and wages and loss of earning capacity past, present and future;

  g. hospital, medical, and rehabilitation expenses past, present and future, including medical equipment and other medical care and treatment;

  h. other psychological, psychiatric and neurological injuries, the full extent of which is yet to be determined and some or all of which may be permanent in nature; and

  i. scarring, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life.

(Doc. No. 1 at ¶ 38.)

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**B.  Standard on a Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)**

Pursuant to Federal Rule of Civil Procedure 12(f), upon a motion by either party, the "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).[2]  The purpose of a Rule 12(f) motion to strike is to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." United States v. Educ. Mgmt. Corp., 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012). A matter is immaterial if it has no essential or important relationship to the claim for relief. Nelson v. Bender, No. 3:15-64, 2015 U.S. Dist. LEXIS 163619, at *11 (W.D. Pa. December 7, 2015).

Although courts possess considerable discretion in disposing of a motion to strike under Rule 12(f), "striking a pleading is a 'drastic remedy' to be used sparingly because of the difficulty

---

[2]  Fed. R. Civ. P. 12(f) provides: [t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter.  The Court may act (1) on its own; or (2) on a motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

of deciding a case without a factual record." <u>BJ Energy LLC v. PJM Interconnection, LLC</u>, Nos. 08-3649 and 09-2864, 2010 U.S. Dist. LEXIS 36969 (E.D. Pa. April 13, 2010).

## IV.    ANALYSIS

### A.    Defendant's Motion to Dismiss Allegations of Recklessness From Plaintiff's Complaint Will Be Denied

Because Plaintiff need only generally aver recklessness at this stage in the proceedings pursuant to Federal Rule of Civil Procedure 9(b) and Pennsylvania Rule of Civil Procedure 1019(b),[3] Defendant's Motion to Dismiss allegations of recklessness from Plaintiff's Complaint will be denied.  Notably, while Plaintiff only asserts a claim of negligence against Defendant, his Complaint alleges that his injuries were "a direct and proximate result of the negligence and recklessness of Defendant."  (<u>See</u> Doc. No. 1 at ¶ 36, 46.)  As Defendant points out, Plaintiff's allegations of recklessness expose Defendant to punitive damages.[4]  (Doc. No. 7 at 15.)  In essence, Defendant is really seeking dismissal of any claim for punitive damages in this case.

---

[3]   Fed. R. Civ. P. 9(b) provides in relevant part: " . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Pennsylvania Rule of Civil Procedure 1019(b) provides in relevant part: ". . . Malice, intent, knowledge, and other conditions of mind may be averred generally."  The only real difference between the two Rules is the insertion of the word "person's" in the Federal Rule which does not change the allowance permitted in either Rule.

[4]   In Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. Punitive damages must be based on conduct which is 'malicious,' 'wanton,' 'reckless,' 'willful,' or 'oppressive' . . . The state of mind of the actor is vital.  The act, or the failure to act, must be intentional, reckless or malicious." <u>Feld v. Merriam</u>, 485 A.2d 742, 747-48 (Pa. 1984) (internal citations omitted).  Recklessness "refers to a degree of care . . . described as 'aggravated negligence.'" <u>Archibald v. Kemble</u>, 971 A.2d 513, 519 (Pa. Super. Ct. 2009).  The Pennsylvania Supreme Court has distinguished recklessness from mere negligence as follows:

> Recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence. [An] actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or

In Pennsylvania, allegations that a defendant acted recklessly do not give rise to a separate cause of action from negligence.  See Archibald v. Kemble, 971 A.2d 513, 519 (Pa. Super. Ct. 2009) ("In this case, even though we hold [the plaintiff] must prove [the defendant] acted recklessly, the cause of action remains sounding in negligence.")  And as noted, at the motion to dismiss stage, allegations of recklessness may be averred generally.  See Guy v. Eliwa, No. 4:23-CV-00412, 2023 WL 5916468, at *5 (M.D. Pa. Sept. 11, 2023) (concluding that "the question of whether [a plaintiff] may generally aver recklessness to support a claim for punitive damages at the Motion to Dismiss stage is clearly a procedural issue," applying Federal Rule of Civil Procedure 9(b) which states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally") (quoting Fed. R. Civ. Pro. 9(b)).

Furthermore, courts are generally reluctant to dismiss allegations of recklessness at the pleadings stage of proceedings.  See id. at *6 ("The weight of authority in this Circuit has prompted most courts, including this Court, to employ [their broad] discretion in favor of preserving recklessness claims at the Motion to Dismiss stage. '[B]ecause the question of whether punitive damages are proper often turns on the defendants' state of mind, this question frequently cannot be resolved on the pleadings alone but must await the development of a full factual record at trial.'"); see also Taylor v. Dupree, No. 1:23-CV-00298, 2024 WL 388113, at *3 (M.D. Pa. Feb. 1, 2024) ("[C]ourts have generally deemed these motions to dismiss [punitive damages claims] as premature and inappropriate where the complaint alleges reckless conduct.")

---

having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Tayar v. Camelback Ski Corp., Inc., 47 A.3d 1190, 1200-1201 (Pa. 2012) (quoting Restatement (Second) of Torts § 500 (1965)).

Here, Defendant claims Plaintiff's allegations of recklessness are not sufficiently pled. (Doc. No. 7 at ¶ 23.)  Specifically, Defendant takes issue with these allegations because Plaintiff "fails to aver any specific facts to support these 'naked assertions of recklessness.'"  (Id. at 15.)  In response, Plaintiff asserts that he has met the requirement for pleading recklessness generally but has also "plead with specificity numerous examples of the Defendants' reckless and wanton conduct."  (Doc. No. 8 at ¶ 25.)  Plaintiff contends that he "specifically [pled] that the Defendant was reckless, by conducting the subject move late at night with a poorly lit truck while intoxicated."  (Id. at ¶ 28.)

At the current stage in the proceedings, viewing the allegations in the Complaint in the light most favorable to Plaintiff, he has alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence of" recklessness on the part of Defendant.  See Twombly, 550 U.S. at 556.  Plaintiff's contentions that Defendant acted recklessly by insisting the move proceed late at night in a dark moving truck while Defendants were intoxicated are allegations that sufficiently aver recklessness to survive the Motion to Dismiss.  (Doc. No. 8 at ¶ 28.)  Accordingly, Defendant's Motion to Dismiss (Doc. No. 7) the allegations of recklessness in the Complaint to avoid a claim for punitive damages will be denied.

### B.     Defendant's Motion to Strike Will Be Denied

Because Plaintiff's allegations noted earlier of Defendant's conduct leading up to Plaintiff's injuries and the description of marijuana use by its employees are material to Plaintiff's claim at this stage of the case, Defendant's Motion to Strike will be denied.  Defendant requests the Court strike from Plaintiff's Complaint paragraphs 9 through 24 as well as all "allegations pertaining to marijuana" contained in paragraphs 37 and 40(l).  (Doc. No. 7 at 16-17.)  The Court

will address Defendant's requests as to paragraphs 9 through 24 and the allegations pertaining to marijuana separately.

### 1.      Paragraphs 9 Through 24

Defendant asserts that the allegations in paragraphs 9 through 24 describing "Defendant's actions PRIOR TO the night at issue" and are immaterial, impertinent and scandalous and should be stricken from the Complaint pursuant to Federal Rule of Civil Procedure 12(f).  (Id. at 16 (emphasis in original).)  Specifically, Defendant claims "[w]hether he showed up timely, the size of the trucks, made extra stops, charged more for the job–none of these issues are material to the essence of whether one of Defendant's agents drove over a basement door or failed to use a ramp for Plaintiff's egress from one of Defendant's trucks.'"  (Id.)  In response, Plaintiff explains that paragraphs 9 through 18 "establish the factual predicate as to why the subject move was being performed in an unsafe environment at 1:00 a.m." and that paragraphs 19 through 24 describe the events "which occurred immediately prior to Plaintiff's subject fall."  (Doc. No. 8 at ¶¶ 33, 37.) Because the facts explaining how Plaintiff and Defendant ended up moving Plaintiff's belongings into his West Chester house late at night bear a relationship to Plaintiff's negligence claim, the allegations contained in paragraphs 9 through 24 will not be stricken.  Accordingly, Defendant's Motion to Strike paragraphs 9 through 24 of Plaintiff's Complaint will be denied.

### 2.      Allegations Pertaining to Marijuana

Defendant also contends Plaintiff's "allegations pertaining to marijuana are immaterial, impertinent and scandalous" and "portray Defendant's employees in a derogatory light while distracting from the discreet issue of the alleged negligence." (Doc. No. 7 at 17.)  Plaintiff counters that these allegations directly "relates the Defendants use of marijuana throughout the entirety of the subject move to their ability to safely conduct the move." (Doc. No. 8 at ¶ 45.)  The allegations

are related to his claims of negligence and recklessness.  While these allegations may portray Defendant's agents in a derogatory light, they are material to Plaintiff's claims that the agents' intoxication "affect[ed] their ability to safely and effectively conduct the moving operation and create[ed] a great hazard to the Plaintiff and the public generally."  (Doc. No. 1 at ¶ 37.) Accordingly, Defendant's Motion to Strike the allegations pertaining to marijuana from Plaintiff's Complaint will be denied.[5]

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 7) will be denied.  An appropriate Order follows.

---

[5] In support of Plaintiff's arguments that Defendant's request to strike the allegations pertaining to marijuana should be denied, Plaintiff makes reference in his Response in Opposition to a June 13, 2024 deposition.  (See Doc. No. 8 at ¶ 44, n.2.)  Because the Court is constrained to consider only allegations contained in the Complaint at the Motion to Dismiss stage, the Court will not consider Plaintiff's reference to depositions at this stage of the litigation.  See In re Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280, 292 (3d Cir. 1999) ("The general rule is that 'a district court ruling on a motion to dismiss may not consider matter extraneous to the pleadings.'")